No. 8547.

TUCKERMAN *v.* BERRY.

1. LACHES—*Ignorance of Facts—Excuses.*  One asserting a trust in lands is not chargeable with laches, where his delay is attributable to ignorance of the facts upon which the trust rests.

2. WILLS—*Letter Construed.*  A letter declaring a trust in lands in favor of a party named, and stating that the writer has made a will but intends to destroy it and make another, and manifesting a wish that the contents of the letter should not be made public during her lifetime, *Held* not of testamentary character.

3. EVIDENCE—*Admissions—Of a Trust in Lands.*  One holding title to lands addressed to an adopted son a letter acknowledging that the lands had been purchased with plaintiff's money, and that plaintiff was the rightful owner thereof.  The letter accepted as sufficient to support a decree declaring the right of plaintiff.

*Error to the Weld District Court, Hon. Robert G. Strong,
Judge.*

*On Rehearing, En Banc.*

Mr. L. M. GODDARD, Mr. GUY D. DUNCAN, Mr. JAMES C.
SCOTT, Mr. H. E. CHURCHILL and Mr. CHARLES ROACH, for
plaintiffs in error.

Mr. JOSEPH C. EWING and Mr. WILLIAM R. KELLY, for
defendant in error.

Opinion by Mr. Justice Teller.

THE defendant in error, hereinafter called the plaintiff,
brought suit against the plaintiffs in error, to recover cer-
tain real estate alleged to have been held in trust by Hannah
J. Dawley, of whose will defendant Tuckerman was the
executor, the other defendants being beneficiaries under
said will.

It appears from the record that the plaintiff was a niece
of Mrs. Dawley's husband, and worked for the family before
the death of the husband. After Mrs. Dawley's decease, a
letter written by her under date of Nov. 28, 1905, and ad-
dressed to Edward Dawley, an adopted son, whose death
preceded that of Mrs. Dawley, was found, and delivered
unopened to plaintiff's attorneys.

The plaintiff being barred by the statute from testifying
in the cause, this letter was, as the court states in its find-
ing, the sole proof of a trust in favor of plaintiff. The trial
court found for the plaintiff as to the real estate, and against
her on the claim for rents and profits from it prior to suit,
and certain personal property mentioned in the letter. Judg-
ment was entered accordingly.

The defendants introduced evidence which showed that
D. L. Dawley acquired the two lots in question, with other
lands, on the 27th day of May, 1879; that on the 5th day of
December, 1879, Dawley, by quit claim deed, conveyed the
two lots to Sarah Molnar, which deed was recorded, May
20, 1882, and that Molnar by quit claim deed conveyed them
to Mrs. Hannah J. Dawley on November 24, 1882.

It appeared further that in 1883 Mrs. Dawley erected upon the lots a substantial house at a cost of some $5,500, which she occupied as a residence to the time of her death.

D. J. Dawley died on May 27, 1881, and Hannah J. Dawley died December 25, 1909.

Plaintiffs in error charge the defendant in error with laches, but as it appears that she had no knowledge of the principal facts upon which the finding that the lots were impressed with a trust was based, and was barred by the statute from testifying as to matters of which she had knowledge, there was no error in the court's ruling on that point.

It is strongly urged that the judgment is wrong for two reasons: 1, That the so-called letter is in fact a will, and that, failing as a will for lack of witnesses, it cannot serve as a declaration of trust; and 2, That in the absence of evidence that Sarah Molnar took title to the lots with notice of the trust, she must be held to have been a purchaser in good faith, whose deed to Mrs. Dawley conveyed title free from the trust, though Mrs. Dawley had knowledge of the facts from which the trust springs.

The first proposition does not seem to have been brought to the attention of the trial court, and we might for that reason decline to consider it; inasmuch, however, as we agree with the conclusion of the trial court that Exhibit A was not intended as a will, we hold the first objection bad on that ground. The writer of the letter had, as the record shows, made a will, and she knew that it was necessary to an effective will that it be signed by witnesses. She says:

"I have made a will here in Greeley, but I have sent my sisters and the rest so much money one time and another that I intend to destroy it and make a new one and do as D. L. wished and as I promised him I would. * * * Now this is my last (will and confession) and I am sorry for what I have done. I would have some one to witness and sign this, but I can't bear to have anyone know about it until I am in my grave."

This is equivalent to a statement that but for the writer's

shrinking from a revelation of the matters to which she had in the letter confessed, she would have had it witnessed, and so made it a will. This, with the statement that she intended to destroy the old will and make a new one, is conclusive that she did not regard nor intend the writing as a will. It contains no words of bequest, but a recital of her wishes addressed to her sole heir apparent, with the view, possibly, of explaining to him the reasons of her disposition of her property in the new will, yet to be made, wherein she would "do as D. L. wished and as I promised him I would."

The second objection is based upon the proposition that the transfer of the lots to Mrs. Dawley by Sarah Molnar gave her a title free from the trust, assuming in the absence of evidence that the conveyance to Molnar was without notice on her part that the land was subject to a trust.

But Mrs. Dawley's own statement is in conflict with this position. Had she purchased the lots for value and in good faith, either with or without knowledge of the trust, being presumed to know that she had a good title, if we accept the law as counsel for plaintiffs in error contend that it is, she would hardly declare that the lots were plaintiff's "by right." Rather should we conclude that the transfers were made under circumstances which justified Mrs. Dawley's acknowledgment of the existence of a trust.

The transfers by which the property in the hands of Mrs. Dawley is claimed to have been freed from the trust were pleaded in the answer and proved on the trial. The court below must have passed upon the question thus presented and found that the conveyances were not made in good faith so as to produce the effect for which counsel now contend, but were merely colorable.

It cannot be said that the evidence does not justify that conclusion.

The letter throughout clearly reveals that the writer was, and for a long time had been, greatly distressed because of the withholding from the plaintiff of knowledge of the matters from which the trust arose. It is a pathetic story of

the sufferings of one whose conscience, long denied recognition, is at last allowed full hearing. It is a strong appeal to the writer's sole heir apparent to right the wrongs which she had not the moral courage to right in her life time.

She wrote:

"Now D. L. had some money of Mattie's that he had kept for her ever since she worked for us. He invested it in these two lots where I live and intended for her to have the place some time when we were through with it. This is the reason I would not give you and Ella a deed to it that time you wanted me to and the reason I did not sell it to Mrs. Clark that time. Oh Edward, how I have longed to sell out and go back east to live, but I promised D. L. to do what was right, and I am getting too old to go now; he had her papers all ready when he died, and I promised him faithfully that I would make everything all right and have everything done as he wanted it, but as no one knew about it but myself I destroyed the will and papers, and lied to Mattie that time she came down and asked me if I had seen any papers for her. I told her I had not seen any but if I found any I would let her know. Oh, Edward, I am afraid to go to bed nights for what I have done for I can't sleep. And have to walk the floor half the nights.   *   *   *   I want Mattie to have the house and two lots where I live for they are hers by right. I want everything left in the house just as it is to pay her in part for what I have kept back of hers all these years."

The letter contains numerous expressions of regret because of the course pursued by the writer, and repeated declarations that she could not endure to have the facts known until after her death; but they are important only as indicating a condition of mind which compelled this belated admission of plaintiff's right to the property in question. Under these circumstances we are not at liberty, and in any event are not disposed, to question the conclusion of the court on this point.

Whether the statement that the husband of Mrs. Dawley invested plaintiff's money in the two lots, and that they

should go to her because they were hers by right, be regarded as a declaration of trust, or as an admission against interest, admissible to prove the allegations of the complaint that plaintiff's money had been invested in the lots under circumstances from which a trust resulted, is immaterial, and the court did not err in declining to classify the trust. This cause was before the Court of Appeals under the title of *Berry v. French* (24 Colo. App. 519, 135 Pac. 985) on the question of the sufficiency of the complaint, and in reversing the judgment, on the ground of error in sustaining a demurrer to the complaint, the court said:

"Resulting trusts and constructive trusts have been discussed learnedly in the briefs, but a difference of terminology does not settle principles, and courts need concern themselves but little with the nice distinctions between the various classifications of trusts. This view is stated very aptly in *Kaphan v. Toney* (Tenn.), 58 S. W. 909-913, and in 39 Cyc. 26."

Exhibit A designated in unmistakable terms the property purchased, the person whose money purchased it; and declared the extent of the interest in it belonging to the *cestui que trusts* i. e. the whole title. It is a solemn declaration, evidently made in agony of spirit after a long struggle with conscience, and to deny to it the effect to which it is entitled, and which it was intended to produce, would be to repudiate the primary rules of equity, and result in a miscarriage of justice.

The findings of the trial court are supported by the evidence; the judgment is without error, and is accordingly affirmed.

*Judgment Affirmed.*

Mr. Justice Hill, Mr. Justice Garrigues and Mr. Justice Bailey dissent.

Decided March 6, A. D. 1916. Rehearing granted January 9, A. D. 1917. On rehearing *en banc* opinion of the department adopted.